**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
TUMPA SAHA,                                                    Index No.

                        Plaintiff,
                                                              **COMPLAINT**
            -against-

                                                              **Jury Trial Demanded**

KRISPY KREME DOUGHNUT CORP.,

                        Defendant.
---------------------------------------------------------------X

Plaintiff Tumpa Saha ("Saha" or "Plaintiff") alleges against Defendant Krispy Kreme

Doughnut Corp. ("Krispy Kreme", the "Company" or "Defendant"), upon information and

belief, as follows:

## NATURE OF THE CLAIMS

1. Krispy Kreme claims on its website (apply.jobappnetwork.com/krispy) that "we respect all opinions and appreciate our differences.  The care passion, and hear that we bring to everything we do is what drives us to inspire customer wonder and lover our communities, locally and across the globe."  Unfortunately, that purported 'respect' did not apply for Saha, a former Krispy Kreme employee, who was effectively terminated shortly after the Company denied her religious accommodation request.

2. Thankfully, the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") are intended to afford employees, like Saha, the safety from being discriminated and retaliated against because of their religion.

3. As such, this is an action for declaratory, injunctive and monetary relief to redress Defendant's unlawful employment practices, including unlawful religious discrimination

1

and retaliation committed against Saha.  The unlawful employment practices described herein were committed in violation of the NYSHRL and NYCHRL.

4. Contemporaneously with the commencement of this action, a copy of this Complaint was served both on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the NYCHRL.

## JURISDICTION AND VENUE

5. This Court has diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332.

6. Plaintiff, at all times relevant to the Complaint, was, and is still is, a citizen of the State of New York.

7. Defendant Krispy Kreme Doughnut Corp., at all times relevant to the Complaint, was, and still is, a North Carolina business corporation.

8. The allegations contained within this Complaint indicate that the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

10. Plaintiff Tumpa Saha ("Saha" or "Plaintiff") was and is a resident of Queens County, New York.

11. Saha was born in Bangladesh and is Hindu.

12. Saha got married in 2007.

**13. As part of Saha's religious beliefs, Saha (as a married woman) wears a Shaka on each of her wrists (small bracelets) and has a Shidur (a red mark) on the top of her forehead.**

14. Defendant Krispy Kreme Doughnut Corp. ("Krispy Kreme", the "Company" or "Defendant") was and is a North Carolina corporation with its principal place of business located at 370 Knollwood St, Winston-Salem NC 27103.

15. Krispy Kreme was and is a foreign business corporation duly organized and existing under and by virtue of the laws of the State of North Carolina

16. Krispy Kreme was and is a foreign business corporation duly authorized to conduct business in the State of New York.

17. Krispy Kreme was and is a multinational, publicly traded company that largely sells doughnut and related products to customers.

18. Krispy Kreme operates at a location of 1601 Broadway, New York NY 10019.

## FACTUAL ALLEGATIONS

19. On or about August 2022, Saha commenced employment with Krispy Kreme.

20. Saha was employed as a Doughnut Specialist.

21. Saha's job duties and responsibilities included but were not limited to working as a cashier.

22. Saha worked for Krispy Kreme at their Times Square location at 1601 Broadway, New York NY 10019.

23. Saha worked a full-time schedule – from Sunday to Thursday (five days per week) from 7:00 a.m. to 3:00 p.m., for a total of 40 hours per week.

24. Saha was paid $17.84 per hour.

NYSHRL & NYCHRL Religious Discrimination

25. In August 2022, Saha interviewed for an open position with Krispy Kreme.

26. During the interview, Saha explained that her Hindu religion requires her to wear the Shaka on her arms.

27. Further, Saha explained if that was an issue for the Company, she would seek employment elsewhere.

28. Krispy Kreme management understood and told Saha not to worry – that she would be accommodated.

29. In fact – Sara Harvell – Krispy Kreme GM emailed Saha on August 11, 2022: "Tumpa – Hello and welcome to the team!  I just wanted to make sure you received our HR partner's contact info.  Her name is Christie and her email is CJulien@krispykreme.com. Please reach out to her regarding your need for an exemption to our personal appearance standards regarding your bracelets.  She will just need an explanation in writing."

30. As such, Saha emailed Christie Julien ("Julien") – Krispy Kreme HR on August 11, 2022 as follows: "My name is Tumpa Saha.  I started working at the location at Times Square this morning.  I was asked to remove my Shaka (Hindu religious bracelet for married woman) in my religion Hinduism we wear shaka as a symbol of marriage.  I never gonna remove my Shaka any kind of situations.  I respect my religious rituals by heart.  In my previous job I had to go through the same situation where I had to explain it so, I totally understand the confusion of it as a bracelet.  Thank you for your understanding.  Please feel free to reach out to me if you have any questions or concerns."

31. Following the August 11, 2022 email from Saha to Julien, Julien spoke with Saha and informed her that her religious accommodation was granted – she could wear her Shaka on her left and right wrists.

32. **From August 2022 through May 2024, Krispy Kreme accommodated Saha's religious beliefs.**

33. **During the first week of June 2024, Nathanial Broomes ("Broomes") (a Krispy Kreme Morning Shift Supervisor – Supervisor of Retail) told Saha, I know you were already approved for a religious accommodation by a previous manager, but now the new manager – Christina Cruz ("Cruz") – GM, said you have to take off your religious bracelets if you want to keep working.**

34. Astonished that she was being denied (despite being previously approved for two years), Saha told Broomes, You know I'm already approved for this.

35. On June 11, 2024, Saha spoke with Cruz to explain that she was accommodated for her religious beliefs throughout her employment with Krispy Kreme.  Cruz asked Saha for prior proof that she was accommodated.  Saha showed Cruz the August 11, 2022 emails.  Cruz told Saha, I think you're good, but I will speak with HR.

36. On June 12, 2024, Saha emailed Cruz, "Hi Christina, Good morning.  Yesterday you already asked about my religious Shaka.  I already explained to you all details which one approved in person HR christie & Sara & all management staff.  After long time every single day asked me about it I feel totally disappointed and irritated.  Thanks."

37. Later that same day (June 12, 2024), Cruz emailed Saha, "Good afternoon Tumpa, I spoke with HR again and showed the email you provided.  I was told that you would have to still apply for religious accommodation through Broadspire as per company policy.  **In**

**accordance with food safety regulations, we must ask you to remove the bracelets while you are working**.  Broadspire – 877-814-1580.  If you have any questions feel free to reach out to Barbara at Bsancilio@krispykreme.com

38. Later that night (June 12, 2024), Saha emailed Cruz, "Hi good afternoon Christina, I already applied today at Broadspire.  My reference number #15943827.  Thanks."

39. Also, on June 12, 2024, Saha emailed Barbara Sancilio ("Sancilio"): "Hi Barbara.  This is Tumpa Saha as a doughnut specialist from Times Square location.  I would like to let you know that Christie the previous HR approved me to wear my Shaka (it's not a bracelet) because of religious believe.  Christie physically came int to the store and approved me. Also when was my orientation I told them any kind of situations I couldn't open my shaka which was they approved me.  At that time HR & all management was approved me.  This is not only the first food company where I work, my previous job was including food company where I had work with that.  I also meet with you several times you desn't told me anything about it.  At that time if they refused me to all my religious Shaka wear definitely I was not started to work in Krispykreme.  Now you guys make new rules because of your new management.  At this point, I am being harassed at work by Christina & Wendy for took of my Shaka which one they said it's bracelet.  Again I wanna let you know that it's not bracelets.  Anyway today asked me to applied in a Broadspire.  I already did today.  The reference number#15043827.  I hope nobody is harassing me at work about this issue until Broadspire's response & you take care of this matter.  Thank you."

40. Oon June 13, 2024, Saha complained to Tracy Bradley ("Bradley") (Krispy Kreme District Manager) about the harassment she was enduring at Krispy Kreme.

41. Saha explained to Bradley how the Company was not accommodating her for her religious beliefs.

42. Bradley said she would have to call legal authority.

43. On June 15, 2024, Broadspire called Saha back and said they were closing her case, because they deal with medical / disability accommodations, not religious accommodations.

44. On June 19, 2024, Saha attended a meeting with Sancilio and Bradley.  At the meeting, Saha requested an explanation as to why she was no longer being accommodated. Sancilio provided a written response denying Saha's religious accommodation request and offering offer a role in sanitation handling trash.

45. Saha declined the sanitation role, as she viewed the sanitation position as a demotion.

46. Saha (as a Hindu) was treated differently by Krispy Kreme as compared with other non-Hindy employees.

47. Other non-Hindu employees – like Cruz – were permitted to wear jewelry at work while they handle food.  Cruz wears a nose ring, earrings and a necklace chain.

48. On June 20, 2024, Saha and Broomes texted as follows:

-Saha: "Hi Nathaniel, this is Tumpa, Could you tell me the facts which new management denied me about my religious accommodation please?"

-Nathaniel (Broomes): "Hi Tumpa, yes, when you first started with the company you were told to remove your bracelets which you then explained to the General manager at the time as well as the Assistant General Managers and the supervisors about your religious accommodation.  This then got brought to HR and the District Manager and then you were approved to wear them.  Now you are being asked to remove your

bracelets everyday again after already being approved to wear them and going through a struggle when you first were hired."

49. In retaliation for complaining about not being accommodated, Saha was written up and ultimately effectively terminated.

50. On June 24, 2024, Cruz issued Saha an Employee Corrective Action Report for the failure to strictly observe and adhere to the company policy on appearance.

51. This was the first write-up that Saha ever received during her two years of employment at Krispy Kreme.

52. On June 25, 2024, Cruz was about to issue a Second Employee Corrective Action Report for the same reasons, only to learn that Saha had already clocked out of work.

53. As of July 9, 2024, Saha was effectively terminated from Krispy Kreme.

54. Saha was treated differently because of her religion.

55. Defendant's actions and conduct were intentional and intended to harm the Plaintiff.

56. As a result of the Defendant's discrimination and retaliation, Plaintiff sustained lost wages.

57. As a result of the Defendant's discrimination and retaliation, Plaintiff suffered severe emotional distress.

58. As Defendant's conduct has been willful, reckless, outrageous, intentional, and/or malicious, Plaintiff also demands punitive damages in an amount which exceeds the jurisdictional limits of all lower Courts.

## FIRST CAUSE OF ACTION
### (Religious Discrimination in Violation of NYCHRL / Failure to Accommodate)

59. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

60. The Administrative Code of the City of New York § 8-107 [1] provides that, "It shall be an unlawful discriminatory practice: "(a) For an employer or agent thereof, because of the actual or perceived age, race, **creed**, color, national origin, gender, disability, marital status, sexual orientation, or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to **discharge from employment** such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

61. Defendant engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code Title 8, § 8-107(a) by effectively terminating Plaintiff and discriminating against Plaintiff because of her religion by failing to accommodate her.

62. That as a direct result of the foregoing, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of NYCHRL)

63. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

64. The New York City Administrative Code Title 8, § 8-107(1)(e) provides that it shall be an unlawful retaliatory practice: "For an employer… to discharge… or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter…"

65. Defendant engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code Title 8, § 8-107(1)(e) by retaliating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendants.

9

66. Defendant engaged in an unlawful discriminatory practice by retaliating against the Plaintiff for making a complaint regarding Defendants' violation of the NYCHRL.

67. That as a direct result of the foregoing, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against Defendant for the following relief:

A. Declaring that the Defendant engaged in unlawful employment practices prohibited by the NYCHRL, and awarding Plaintiff a recovery for damages sustained;

B. Declaring that the Defendant engaged in unlawful employment practices prohibited by the NYSHRL, and awarding Plaintiff a recovery for damages sustained;

C. Declaring that the Defendant discriminated against Plaintiff on the basis of her religion and awarding Plaintiff a recovery for damages sustained;

D. Declaring that the Defendant retaliated against Plaintiff on the basis of her religion and awarding Plaintiff a recovery for damages sustained;

E. Awarding damages to the Plaintiff, retroactive to the date of her effective termination, for all lost wages and benefits resulting from the Defendant's unlawful employment practices in an amount that exceeds the jurisdictional limit of all lower courts;

F. Awarding Plaintiff compensatory damages for their mental and emotional injuries in an amount that exceeds the jurisdictional limit of all lower courts;

G. Awarding Plaintiff punitive damages;

H. Awarding Plaintiff attorney's fees, costs and expenses; and

I.  Awarding Plaintiff such other and further relief as the Court may deem just and proper to

remedy the Defendant's unlawful employment practices.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: July 22, 2024
      New York, New York

Respectfully submitted,

**Akin & Salaman PLLC**

*/s/ Robert D. Salaman*

_____

Robert D. Salaman
Zafer A. Akin

45 Broadway, Suite 1420
New York, NY 10006
Telephone: (212) 825-1400
Facsimile: (212) 825-1440
rob@akinlaws.com
zafer@akinlaws.com

*Counsel for Plaintiff*